# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE Assigned on Briefs October 8, 2013

## STATE OF TENNESSEE v. DANTE DEVON OMAR TRUITT

**Appeal from the Criminal Court for Davidson County**
**No. 2012-C-2397 Cheryl Blackburn, Judge**

---

**No. M2013-00606-CCA-R3-CD Filed October 16, 2013**

---

The Defendant, Dante Devon Omar Truitt, pled guilty to explosive weapon possession with an agreed eight-year sentence as a Range I, standard offender. At a subsequent sentencing hearing, the trial court sentenced the Defendant to serve the eight-year sentence in the Tennessee Department of Correction. The Defendant appeals, asserting that the trial court erred when it denied alternative sentencing. After a thorough review of the record and applicable law, we find no error in the trial court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Emma Rae Tennent (on appeal) and Sarah King (at hearing), Nashville, Tennessee, for the appellant, Dante Devon Omar Truitt.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Megan King, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

This case arises from police officers discovering a pipe duct-taped to a propane tank in the Defendant's car. As a result, a Davidson County grand jury indicted the Defendant for possession, manufacture, transport, repair, or sale of an explosive weapon. The Defendant was also indicted for unlawful possession of a handgun.

On November 29, 2012, the Defendant pled guilty to possession of an explosive weapon and

agreed to an eight-year sentence as a Range I, standard offender, with the trial court to determine the manner of service of the sentence. At the guilty plea submission hearing, the State offered the following factual basis for the trial court's acceptance of the Defendant's guilty plea:

> [O]n March the 24th, 2012, police were called to respond to a residence, which was here in Davidson County. It was the residence of the [D]efendant and his wife. While traveling to the scene they got an update that the [D]efendant possibly had a bomb and a gun. They saw the [D]efendant driving. They pulled him over. Located in the backseat was a propane tank with a pipe and duck [sic] tape taped to it, which was in the rear driver's side floorboard. The man was established who - - on the suspicious package and the surrounding area was evacuated. The bomb squad was called and responded to the scene. They were able to dismantle the bomb.

On January 25, 2013, the trial court held a sentencing hearing to determine the manner of service of the Defendant's eight-year sentence. At the hearing, the parties presented the following evidence: Matt Silvey, a licensed clinical social worker, testified that he was employed with the Nashville Public Defender's office. He said that his job included assisting clients with treatment plans, seeking mental health or medical treatment, and assisting with investigative duties on the defense teams.

Mr. Silvey testified that he had met the Defendant through his work in the public defender's office. He described the Defendant as "an intelligent guy, relatively high functioning [ ] with a good work ethic and . . . strong feelings of responsibility towards his family." Mr. Silvey said that he also believed that the Defendant was experiencing "some level of depression" which manifested through "increased levels of irritability" and "anger responses." Mr. Silvey described this behavior as "a bit of a pattern for [the Defendant]."

Mr. Silvey testified that the Defendant had little or no relationship with his biological father and was primarily raised by his mother. The Defendant completed high school and then moved to Nashville in an attempt to make a connection with his father; however, the relationship with his father became "very volatile." Mr. Silvey opined that this failed attempt at a relationship with his father was "deeply painful" causing the Defendant to respond to difficult situations by "isolating and becoming angry."

Mr. Silvey testified that he believed the Defendant would benefit significantly from a mental health assessment and treatment. Although the Defendant did not currently have insurance, Mr. Silvey stated that the Defendant could seek help at one of the community health centers through the state's Behavior Health Safety Net program.

Verlaine Truitt, the Defendant's wife, testified that she believed that the Defendant would benefit from counseling. She said that counseling would help the Defendant learn how to handle his

2

anger in a better way. Ms. Truitt said that the Defendant was not abusive when he became upset but rather "holds a lot of things inside." She said that the behavior underlying the Defendant's conviction was not typical and that she had never seen the Defendant with a bomb before.

Ms. Truitt testified that she and the Defendant had three sons and one daughter. She described the Defendant as "a very good father." She said that she and the children were shocked by the Defendant's actions resulting in this arrest. Ms. Truitt said that the Defendant has expressed remorse over this incident to her, and she believed that he would be successful in serving out a probation sentence.

The Defendant testified that he graduated from high school and was a licensed certified nurse technician ("CNT"). He stated that he worked either as a CNT or in "security." The Defendant denied suffering from any type of mental illness. He further denied any substance abuse or disabilities. The Defendant acknowledged a prior reckless driving conviction and stated that he had never served a probation sentence.

The Defendant described himself as "very involved" with his children who were eight, seven, three, and two years old. He said that, if he were granted an alternative sentence, he would live with his wife and children. The Defendant said that he believed he would benefit from counseling and would comply with any conditions of probation assigned by the trial court. The Defendant introduced a letter from his mother and a letter from his aunt stating that he was a good father and a good candidate for a probation sentence.

On cross-examination, the Defendant testified that, on the day police found the bomb in his car, he was driving to the home of "Ms. Rice," a woman he claimed had stolen money from him. The Defendant stated that he was unaware there was a bomb in the truck until police found it in the back seat. The Defendant denied making the bomb but admitted placing the bomb in his truck. The Defendant would not disclose the source of the bomb because he was "in fear for [his] life."

Upon further questioning by the trial court, the Defendant agreed that he had possession of the bomb since July 4, 2011. From the time he acquired it until police found the bomb on March 24, 2012, the Defendant said that he stored the bomb "somewhere that it was just an okay spot." The Defendant said that he had the bomb because "they told me it was like a big fire cracker." He explained that he expected to set it off on the Fourth of July but did not have the opportunity to do so. The Defendant denied any knowledge that the bomb would create shrapnel.

After hearing this evidence, the trial court stated that it was considering arguments as to sentencing alternatives, the evidence presented at the sentencing hearing, the presentence report, the nature and characteristics of the crime, enhancement and mitigating factors, the Defendant's statement, criminal history, and potential for rehabilitation. The trial court, in considering factors pertaining to confinement, went on to find:

[T]he only one that really would apply is whether it's necessary to avoid depreciating the seriousness of the offense or is particularly suited to provide an effective deterrence to others likely to commit similar offenses. And when you do this based solely on this factor, the offense must be especially violent, horrifying, shocking, or reprehensible, offensive or to an exaggerated degree. And it must outweigh all the other factors favoring probation. And keeping in mind also it is up to the [D]efendant to convince me that probation would be appropriate in this case. And I've heard - - I listened to the preliminary hearing. We had a bond hearing, and then we have the presentence report. I guess in all this - - I think this does qualify as a shocking, reprehensible - - I mean, we're talking about a pipe bomb in a car. Now, his wife tells me that the door handles were not on the car already. So even though to the police it might have seemed that it would force somebody to open the back door, apparently that car was already that way. And she hadn't seen the bomb. But according to [the Defendant's] testimony he had had that bomb for some time. He gets mad, and he goes over there. Now, he says he doesn't think he has the bomb with him, but, I mean, it's pretty hard to miss. The police officer could see it from outside the car. The point is this is a pretty horrifying thing. And he's - - he's in the middle of the night, and then he has a gun on him. This is

• plus [the Defendant] is not credible whatsoever on this issue. He has not convinced me. He's willing to have counseling, but I'm not sure for what other than his anger. I appreciate that he has a family that he takes care of, but I'm afraid I'm going to have to impose the sentence, [the Defendant], based on the fact of the seriousness of this and to avoid depreciating the seriousness of the offense.

It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant argues that the trial court erred when it denied him alternative

sentencing. The State responds that the trial court considered alternative sentencing and properly sentenced the Defendant to confinement based upon the seriousness of the offense. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555

(Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Recently, our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *Caudle*, 388 S.W.3d at 278-79. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed.

T.C.A. § 40-35-103 (2010).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated

5

offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6)(2010). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6) (2010). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A.§ 40-35-102(6) (2010) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularlysuited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2010).

In this case, the trial court properly considered the relevant sentencing factors. The trial court concluded that the Defendant did not have a long history of criminal conduct or that less restrictive measures than confinement had frequently or recently been applied. The trial court did, however, deny an alternative sentence based upon the seriousness of the offense. The evidence shows that the Defendant acquired a pipe bomb and stored it for a period of at least eight months. The Defendant, angry at an acquaintance, put the bomb inside his vehicle and proceeded to a residential area where police stopped the Defendant and found the bomb inside the vehicle. The residential area was evacuated and a bomb squad disabled the bomb, diffusing the threat to the local residents. At the sentencing hearing, the Defendant failed to be forthcoming about the source of the bomb and downplayed the seriousness of the destructive potential of such an item.

In sentencing matters we are to afford the trialcourta presumption of reasonableness. In so doing, we can not conclude in this case that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances. The Defendant possessed an explosive device, capable of causing devastating injury and damage. The device was possessed in a residential area. It is within the trial court's discretion to characterize this conduct as "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." *State v. Zeolia*, 928 S.W.2d 457, 462 (Tenn. Crim. App.1996). Accordingly,the trial court did notabuse its discretion bydenying an alternative sentence in this case. The Defendant is

not entitled to relief.

### III. Conclusion

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE